IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: TE HOLDCORP, LLC | : | Chapter 11 |
| | : | |
| Debtors. | : | Bankr. No. 20-11442-JKS |
| | : | |

---

| | | |
|---|---|---|
| SPITFIRE ENERGY GROUP, LLC, | : | |
| | : | |
| Appellant, | : | Civ. No. 21-779-CFC |
| v. | : | Civ. No. 21-780-CFC |
| | : | |
| PRESIDIO PETROLEUM LLC, | : | |
| | : | |
| Appellee. | : | |

---

**<u>OPINION</u>**

March 30, 2022
Wilmington, Delaware

CONNOLLY, UNITED STATES DISTRICT JUDGE

The dispute between Spitfire Energy Group, LLC ("Spitfire") and Presidio

Petroleum LLC (together with its affiliates, "Presidio") concerns the Bankruptcy

Court's interpretation, enforcement, and exercise of subject matter jurisdiction

regarding two of its own prior orders: (1) *Order (A) Approving the Sale of the*

*Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances,*

*(B) Approving the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases, and (C) Granting Related Relief* (A1340-1636)[1] ("Sale Order")

and (2) *Amended Order (I) Approving (A) the Adequacy of the Disclosure Statement*

*and (B) the Prepetition Solicitation Procedures and (II) Confirming the Joint*

*Prepackaged Plan of Liquidation of Templar Energy LLC and Its Debtor Affiliates*

*Under Chapter 11 of the Bankruptcy Code* (A1868-1953) ("Confirmation Order").

The Sale and Confirmation Orders were enforced by the Bankruptcy Court

pursuant to two subsequent orders[2] which are now on appeal before this Court: (1)

*Order Enforcing (A) the Sale Order and (B) the Confirmation Order* (A2325-2327)

---

[1] The appendix filed in support of Spitfire's opening brief (D.I. 10) is cited herein as "A___," and the appendix filed in support of Presidio's answering brief (D.I. 18) is cited herein as "PA ___."

[2] Because both decisions of the Bankruptcy Court involved the same underlying facts and legal questions, the appeals were consolidated by this Court's September 9, 2021 Order.  (*See* Civ. No. 21-779-CFC, D.I. 12) (unopposed motion).

("Enforcement Order"), dated February 26, 2021 and (2) *Order Denying Spitfire Energy Group LLC's Motion to Reconsider and Amend Order* (A2428) ("Reconsideration Order"), dated May 14, 2021.  The Enforcement Order and Reconsideration Order are final orders, and the Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 158(a)(1).  The Court will affirm the Enforcement Order and Reconsideration Order.

## I.  BACKGROUND

### A.    Templar Bankruptcy and the "Free and Clear" Sale to Presidio

Templar Energy LLC, together with certain affiliates (collectively "Debtors"), operated an oil and gas exploration and production company.  On June 1, 2020, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, followed by a proposed prepackaged plan and a motion to sell substantially all their assets.  Spitfire objected to the proposed plan (A0576-A0589) ("Plan Objection")[3] and proposed cure amount (A0590-A0619) ("Cure Objection") with respect to a master services contract ("MSC") among the Debtors, Spitfire, and various related

---

[3] This opinion cites to the docket of Debtors' jointly administered chapter 11 cases, *In re Templar Energy LLC, et al.*, Case No. 20-11441, which closed on July 31, 2020, and the docket of the Debtors' sole remaining case, *In re TE Holdcorp, LLC*, Case No. 20-11442, which remains open for plan administration, in each case as "B.D.I. __."  The Reconsideration Motion, filed on March 12, 2021 (B.D.I. 115), and all subsequent pleadings referenced herein, were filed on the docket of *In re TE Holdcorp, LLC*, which was originally assigned to the Honorable Brendan Linehan Shannon, and was reassigned on April 8, 2021 to the Honorable J. Kate Stickles (B.D.I. 124).

parties, governing the disposal of saltwater from Templar's oil wells through Spitfire's saltwater disposal system.

On July 9, 2020, the Debtors, Spitfire, and Spitfire CEO David D. Le Norman ("Le Norman," and together with the Spitfire, the "Spitfire Parties") entered into a stipulation (A0681-A0694) ("Stipulation"), dated July 9, 2020, to resolve the Plan Objection and Cure Objection.  The Debtors and the Le Norman Parties stipulated, among other things: (i) that the MSC was an executory contract that could be assumed or rejected under § 365 of the Bankruptcy Code; (ii) to a fixed a cure amount of $2,750,000; (iii) to a discounted contract rate upon assumption; (iv) that Spitfire would promptly withdraw its Plan Objection and Cure Objection; and (v) that Spitfire "shall file no further pleadings or documents in the Chapter 11 Cases except as necessary to (i) defend against any claims or motions filed against a Le Norman Party" or "(ii) file general unsecured proofs of claim unrelated to the Spitfire Agreements"—i.e., the MSC.  Presidio was not a party to the Stipulation.

Also on July 9, 2020, Debtors received three qualified bids.  (Sale Order, A1345).  Presidio was the highest bidder for purposes of opening the auction (PA001-PA003) but was not previously designated the stalking horse bidder.  Because there were multiple qualified bidders, Debtors moved forward with an auction.  On July 10, 2020, Debtors designated Presidio's purchase agreement as the highest or otherwise

best bid in connection with the asset sale following a robust auction among the three qualified bidders.  (*Id.*)

On July 16, 2020, the Bankruptcy Court held a hearing on the sale motion and confirmation of the plan.  (A1768-A1867).  Spitfire did not object to the sale.  On July 17, 2020, the Bankruptcy Court entered the Sale Order, authorizing the sale of substantially all the Debtors' assets to Presidio.  On the same date, the Court entered an order confirming the *Second Amended Joint Prepackaged Plan of Liquidation of Templar Energy LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (A1288-A1339) ("Plan").  (A1637-A1721).  This initial confirmation order authorized, among other things, the rejection of all executory contracts, including the MSC, not "otherwise rejected, assumed, or assumed and assigned" as of the effective date.  The Debtors also filed their designation schedule, indicating that the MSC would not be assumed and assigned pursuant to § 365 of the Bankruptcy Code. (A1722).

On July 24, 2020, the Bankruptcy Court held a hearing ("Sale Hearing") to consider approval of the sale pursuant to § 363 of the Bankruptcy Code.  Spitfire and the Le Norman Parties received notice of the Sale Hearing which the Bankruptcy Court deemed "timely and proper" for "all interested parties."  (A1344).  The Le Norman Parties' counsel appeared at and participated in the Sale Hearing arguing their confirmation objection (A0576-0589), which ultimately was overruled by the

4

Bankruptcy Court.  The proposed Sale Order included standard findings and provisions related to the § 363 "free and clear" nature of the proposed asset sale. Among others, these findings and provisions included that:

(i)     the Debtors' Assets were being sold "free and clear" of "Interests and Claims" pursuant to § 363(f) of the Bankruptcy Code and the Debtors may **transfer** all of their right, title and interest to the **Assets free and clear of . . . any and all** . . . claims . . . restrictions . . . **servitudes**, rights-of-way, encroachments, **restrictive covenants** . . . contracts . . . **contract rights, covenants**. . . and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by **agreement**, understanding, law, equity otherwise (A1348-A1350 (emphasis added));

(ii)    Presidio would not have entered into the sale if the transfer of the Debtors' assets were not "free and clear" pursuant to § 363(f) (*id.* at A1349, A1354);

(iii)   that the conditions of § 363(f) of the Bankruptcy Code had been satisfied with respect to all Claims or Interests, by one or more provisions set forth in § 363(f)(1) – (5) of the Bankruptcy Code.  Holders of Interests or Claims who did not object to the purchase agreement or the Sale Motion were deemed to have consented to the transactions contemplated thereby pursuant to § 363(f)(2) of the Bankruptcy Code (*id.* at A1349-A1350, A1374); and

(iv)    upon the Closing, all entities or persons are permanently and forever prohibited, barred, estopped, and **permanently enjoined from asserting against [Presidio], and its permitted successors**, designees, and **assigns**, or property, or the Assets conveyed in accordance with the APA **any Interest or Claim of any kind or nature whatsoever arising prior to Closing**, including, without limitation, **under any theory of successor or transferee liability**, *de facto* merger or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated (*id.* at A1359-A1360 (emphasis added)).

The Sale Order also stated that the Bankruptcy Court would "retain exclusive jurisdiction over any matters related to or arising from the implementation of [the Sale Order]." (A1374). Spitfire did not object that the Leases could not be sold free and clear of their purported covenants running with the land. The Bankruptcy Court entered the Sale Order. The docket reflects no appeal of the Sale Order, and the Sale Order is final.

**B.      The Confirmation Order**

The plan approved by the Bankruptcy Court included third-party releases, to which Spitfire opted-out of with respect to Presidio. On July 29, 2020, the Debtors filed a proposed amended order confirming the plan and the Bankruptcy Court entered it (A1868-A1953) ("Confirmation Order"). The Confirmation Order includes express language addressing Spitfire's release opt-out. (*See* Confirmation Order ¶ 39 ("THE SETTLEMENTS, RELEASES, EXCULPATIONS, AND INJUNCTIONS SET FORTH IN ARTICLE X OF THE PLAN ARE APPROVED IN THEIR ENTIRETY AS IF SET FORTH HEREIN AT LENGTH, AND WILL BE EFFECTIVE IMMEDIATELY AND, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, BINDING ON ALL PARTIES IN INTEREST ON THE EFFECTIVE DATE"); *id.* ¶ 45 ("[N]otwithstanding anything else herein or in the Plan to the contrary (i) Spitfire Energy Group, LLC shall not be deemed to be a Releasing Party or a Released Party with respect to Presidio Investment Holdings LLC and its

6

successors and assigns, and (ii) Presidio Investment Holdings LLC and its successors and assigns shall not be deemed to be a Releasing Party or a Released Party with respect to Spitfire Energy Group, LLC.")).

The Confirmation Order authorized the rejection of any and all executory contracts that were not "otherwise rejected, assumed, or assumed and assigned, including in connection with any sale" as of the Effective Date. (A1882-1883; A1928). This included the rejection of the MSC which had been stipulated to as an executory contract in the Le Norman Stipulation. As a result of the rejection, Spitfire was entitled to a general unsecured claim for damages against the Debtors related to the rejection of the MSC. Spitfire filed its proof of claim for rejection damages under the MSC on August 31. 2020. (PA004-PA008). The effective date of the Plan occurred on August 3, 2020. (A1954).

## C.     The Texas Action

On September 11, 2020, Spitfire commenced an action against Presidio in Texas state court arising from the rejection of the MSC ("Texas Action") and alleging in excess of $62 million in damages, seeking to enforce the MSC and the covenants against Presidio, as successor to the Debtors, notwithstanding that Spitfire had already filed a proof of claim against the Debtors for damages relating to the rejection of the MSC. *Spitfire Energy Group LLC v. Presidio Petroleum LLC*, Case No. 13997. Presidio removed the Texas Action to federal court ("Texas District Court")

and moved to transfer the proceeding to the Bankruptcy Court. *Spitfire Energy Grp.*

*LLC v. Presidio Petroleum LLC*, No. 20-002224 (N.D. Tex. Oct. 26, 2020).  Spitfire

moved to remand and objected to Presidio's motion to transfer.

### D.   Motion to Enforce and Motion for Reconsideration

On October 22, 2020, Presidio filed a motion to enforce the Sale Order and the

Confirmation Order (A1971-A1983) ("Enforcement Motion").[4]  On January 14,

2021, the Bankruptcy Court held a hearing on the Enforcement Motion (A2258-

A2313) ("Enforcement Hrg. Tr."), and on February 12, 2021, the Bankruptcy Court

issued its oral ruling granting the Enforcement Motion (A2314-2324) ("Enforcement

Ruling Tr.").  The Bankruptcy Court held, among other things, that:

- The Bankruptcy Court **"enjoys core jurisdiction to construe and enforce its own orders"** and it is the proper forum to consider the dispute.

- **"It would frustrate the purpose of this bankruptcy proceeding and Section 363(f) if Presidio were obliged to defend itself in another forum** against claims that it is statutorily and contractually protected from...."

- **The Sale Order transferred the Debtors' Assets, "free and clear, of claims arising out of the [MSC];"** and determining whether it was an executory contract or covenant burdening the land was irrelevant, as the Sale Order barred both.

- Spitfire's opt-out of the third party releases as to Presidio in the Plan did not affect the "free and clear" nature of the sale.  "[T]he rejection of the [MSC] by

---

[4] The Court granted the Enforcement Motion on certification of counsel (A1987). Spitfire later moved to set aside that order due to lack of notice (A1990).  The Bankruptcy Court vacated its order (A2115) and entered an agreed order (A2116) scheduling a hearing and briefing on the Enforcement Motion.

the debtor means that **any claim or damages Spitfire may have arising from the breach of the [MSC] may be asserted only against the Debtors, not against Presidio.**"

(Enforcement Ruling Tr. at 7:17-18, 8:7-10, 14-25, 9:1-9 (emphasis added)).

Accordingly, the Bankruptcy Court entered the Enforcement Order on February 26, 2021 (A2325-2327).

On March 12, 2021, Spitfire filed a motion to reconsider (A2328-2346) ("Reconsideration Motion"). Spitfire alleged three errors that required reconsideration: (1) Presidio misrepresented that it was not involved in discussions regarding Spitfire's claims; (2) the Bankruptcy Court somehow misinterpreted, and thus, should reconsider its reading of the Confirmation Order; and (3) the Bankruptcy Court ignored the *Lone Star*[5] decision, which Spitfire argued, required the Bankruptcy Court not to entertain the Enforcement Motion until the Texas Court ruled on the motion to transfer.

On April 14, 2021, the Bankruptcy Court held a hearing on the Reconsideration Motion (A2378-A2415) ("Reconsideration Tr."). At the Reconsideration Hearing, Spitfire's counsel conceded subject matter jurisdiction:

> [Q:] So, you don't dispute that, that a Bankruptcy Court has jurisdiction
> to interpret and enforce its own sale and confirmation orders. . . .
> [A:] No. There's no dispute there at all.

---

[5] *Lone Star Industries, Inc. v. Liberty Mutual Ins.*, 131 B.R. 269 (D. Del 1991).

(Reconsideration Tr. at 16:7-15, A2393). The Bankruptcy Court denied the Reconsideration Motion pursuant to its Memorandum Opinion (A2416-2427) ("Reconsideration Op.") and Reconsideration Order (A2428).

Spitfire filed a timely appeal of the Enforcement Order and Reconsideration Order. The merits of the appeals are fully briefed. (D.I. 9, 10, 17, 18, 19). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    STANDARD OF REVIEW

This appeal seeks to unwind the terms of the final Sale Order which authorized the Sale of certain leases free and clear of all claims and encumbrances, including Spitfire's purported covenants. While Spitfire raises thirteen separate issues on appeal (D.I. 9 at 1-4), its argument is centered on the limited opt-out of third party releases contained in Paragraph 45 of the Confirmation Order—an opt-out which, Presidio argues, is unrelated to the Sale Order. Thus, Spitfire's appeal is centered on the Bankruptcy Court's interpretation of its own orders.

A bankruptcy court's interpretation of its own orders is afforded greater discretion by this Court and is reviewed under an abuse of discretion standard. *See In re Shenango Group Inc.*, 501 F.3d 338, 346 (3d Cir. 2007) ("[A] bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of

discretion."); *In re Dura Auto. Sys., Inc.*, 2010 WL 180249, at *1 (D. Del. Jan. 19, 2010) ("In the Third Circuit, the bankruptcy court's interpretation of its own sale order is subject to review for an abuse of discretion.").

"An abuse of discretion exists where the Bankruptcy Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 148 (3d Cir. 2010); *In re SemCrude, L.P.*, 428 B.R. 590, 593 (D. Del. 2010). "To show an abuse of discretion, appellants must show the district court's action was arbitrary, fanciful or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002). A court's "decision should not be overturned under the abuse of discretion standard, unless no reasonable person would adopt the lower court's view." *In re SemCrude, L.P.*, 428 B.R. at 593. Likewise, admissibility of evidence and other evidentiary rulings are reviewed for abuse of discretion. *Stecyk*, 295 F.3d at 412.

Any legal conclusions, including jurisdictional findings and the Bankruptcy Court's decision regarding mandatory abstention, are subject to *de novo* review. *See In re Accuride Corp.*, 483 B.R. 617, 623 (D. Del. 2012). Factual conclusions are reviewed for clear error. *In re Exide Techs.*, 607 F.3d 957, 961–62 (3d Cir. 2010), as amended (June 24, 2010); *In re Anes*, 195 F.3d 177, 180 (3d Cir. 1999). The Bankruptcy Court's factual determinations should be upheld unless they are "completely devoid of minimum evidentiary support displaying some hue of

credibility, or … [if they] bear[] no rational relationship to the supportive evidentiary data." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). Finally, *even if* an error is found, Spitfire must show that the error was more than "harmless error." Fed. R. Civ. P. 61 (establishing "harmless error" threshold before a judgment or order can be reversed); *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 329 (3d Cir. 2001) (explaining an error is harmless if it did not affect the judgment); *Fattman v. Bear*, 249 F. App'x 956, 958 (3d Cir. 2007) (same).

## III.   DISCUSSION

This appeal is grounded in Spitfire's contention that the final Sale Order did not transfer the Debtors' assets free and clear of Spitfire's claims, contractual rights, and real property covenants under the MSC. Spitfire contends that because it was not a releasing party under the Plan and opted out of certain third-party releases therein, the Plan preserved its successor claims against Presidio that were otherwise expressly released in the Sale Order. Spitfire further contends that there was an undisclosed agreement with Presidio that provided that if Spitfire did not object to the Sale to Presidio, Spitfire's claim against Presidio in excess of $62 million would be preserved for later determination. But the sale of the assets was effected pursuant to

the Sale Order, not the Plan, and the Court finds no support of Spitfire's argument that the Confirmation Order alters or supersedes the Sale Order, which conveyed Debtors' assets to Presidio "free and clear of all liens, claims, interests, and encumbrances." (A1340). Spitfire's remaining arguments regarding jurisdiction and abstention are unavailing.

### A.   The Bankruptcy Court Did Not Err in Interpreting and Enforcing Its Own Sale Order and Confirmation Order

Spitfire argues that the Bankruptcy Court erred: (1) by determining that the Sale Order could have or did extinguish real covenants running with the land; (2) because Spitfire's non-objection amounted to consent pursuant to section 363(f) of the Bankruptcy Code; and (3) in its interpretation of paragraph 45 (*i.e.*, the third-party release language) of the Confirmation Order.

#### 1.   The Bankruptcy Court Was Not Required to Determine Whether Any Real Covenants Existed

Spitfire contends that "by its Enforcement Motion, Presidio urged the Bankruptcy Court to rewrite history and its orders post confirmation to extinguish the real covenants that benefit Spitfire." (D.I. 9 at 11). Spitfire further contends that, "[w]ithout cause, the Bankruptcy Court did so." (*Id.*) This argument finds no support in the record below.

The Bankruptcy Court determined that it did not need to address whether Spitfire in fact had real covenants running with the land, and that, if such covenants

existed, § 363(f) of the Bankruptcy Code permitted the sale free and clear of such covenants. (*See* Enforcement Ruling Tr. at 5:12-18; 8:24-25; 9:1 (noting the Bankruptcy Court "did not need to determine whether the obligations under the MSC were covenants running with the land because the Sale Order provides for a transfer of the assets free and clear of both covenants and contracts.")) On reconsideration, the Bankruptcy Court explained that "[b]ecause the plain language of the Sale Order supports the Court's conclusion, there is no clear error of fact or law," and thus reconsideration was not warranted and denied. (A2423).

Spitfire asserts that the Bankruptcy Court misapplied § 363(f) because that section of the Bankruptcy Code could not eliminate Spitfire's alleged covenants. (*See* D.I. 9 at 29). According to Presidio, any such argument is a collateral attack to unwind the clear terms of the Sale Order and prevent the transfer of the assets to Presidio free and clear under a late-argued theory. The Court agrees with Presidio that this argument is foreclosed by the fact that Spitfire had notice and an opportunity to object to the otherwise unambiguous terms of the Sale Order—which transferred the assets free and clear of any such covenant—and yet it failed to do so. That Spitfire may have relinquished these rights—either by attending the Sale Hearing and not objecting, or because it unilaterally bargained away such rights to the Debtors pursuant to the Stipulation—is of no consequence here. The argument is further foreclosed by the fact that the Sale Order was not appealed and is final.

### 2.     The Bankruptcy Court Was Not Required to Redetermine the Issue of Consent

Spitfire argues that "it is plain error to take Spitfire's nonobjection to the sale of [the Debtors'] assets as consent to the Bankruptcy Court extinguishing the real covenants at issue." (D.I. 9 at 32).  The Court agrees with Presidio that this argument is a red herring.  As an initial matter, the Bankruptcy Court did not determine the issue of "consent to . . . extinguish[ment]" in either its Enforcement Order or Reconsideration Order.  The issue of consent is irrelevant when Spitfire—a party-in-interest—had notice of and an opportunity to object to the sale yet failed to do so, and its right to appeal the Sale Order has lapsed.  *See* Fed. R. Bankr. P. 8002 (limiting time for filing an appeal to fourteen days after Bankruptcy Court's judgment or order).  Moreover, the only reasonable interpretation of the Sale Order is that Spitfire consented to or was deemed to have consented to the sale under § 363(f) of the Bankruptcy Code.  The Sale Order provides:

> Each entity with an Interest of Claim . . . has subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale. . . . Those holders of Interests or Claims against the Assets *who did not object or who withdrew their objections* to the [purchase agreement] or the [Sale] Motion are deemed to have consented to the transactions contemplated thereby pursuant to 363(f)(2) of the Bankruptcy Code.

(A1349-50 (emphasis added)).  Likewise, the Sale Order expressly states that one or more provisions set forth in §§ 363(f)(1)-(5) of the Bankruptcy Code were satisfied prior to the Sale.  (A1349).  Applying the plain terms of the Sale Order, Spitfire either

15

consented or was deemed to have consented to the Sale when it did not object to the

sale or the terms of the Sale Order.  Undeterred, Spitfire argues that its nonobjection

was not consent, "but rather compliance with the deal struck by which it retained its

claims against Presidio." (D.I. 9 at 33).  That Spitfire may have bargained away its

rights to object to the sale to the Debtors, pursuant to the Stipulation, does not support

its argument.  The Court has no evidence of the undocumented side agreement

between Spitfire and Presidio that allegedly provided that Spitfire's claims against

Presidio arising from the MSC would survive the sale, notwithstanding the Sale

Order's express terms.  Finally, as Presidio correctly points out, Spitfire is time-

barred from appealing the consent issue.  *Matter of: Sherwin Alumina Co., LLC.*, 952

F.3d 229, 235 (5th Cir. 2020), *cert. denied sub nom. Port of Corpus Christi Auth. of

Nueces County, Tex. v. Sherwin Alumina Co., LLC*, 141 S. Ct. 360 (2020) ("[A]ny

Section 363(f) objection had to have been raised **on direct appeal of the

confirmation order** and cannot be raised in this collateral adversary proceeding")

(emphasis added); *In re Christ Hosp.*, 502 B.R. 158, 175 (Bankr. D.N.J. 2013) *aff'd*,

2014 WL 4613316 (D.N.J. Sept. 12, 2014) ("What is clear and uncontroversial is that

such **consent-based bankruptcy sale orders—even if wrong . . .—are not subject

to collateral attack**.  Fed. R. Civ. P. 60(b) is the appropriate remedy for relief from

such orders, a remedy not accessed by P[laintiff] in this case.") (emphasis added).

16

### 3.     The Bankruptcy Court Correctly Interpreted Paragraph 45 of the Confirmation Order

Spitfire challenges the Bankruptcy Court's interpretation regarding the language in paragraph 45 of the Confirmation Order, which states that Spitfire is not granting standard third-party plan releases under the Plan as to Presidio. Spitfire argues that this language supersedes the "free and clear" language of the Sale Order. And it argues that, by failing to conclude that the opt-out language in Paragraph 45 preserved the successor claims eliminated in the Sale Order, the Bankruptcy Court violated the canon against surplusage. (D.I. 9 at 12, 28). The Court reviews the Bankruptcy Court's interpretation of paragraph 45 for abuse of discretion, and the question is whether no reasonable person would adopt the Bankruptcy Court's view.

The Bankruptcy Court's interpretation of the Confirmation Order is reasonable and accords with the principle of construction that requires an order to be read "so as to give meaning to all of its terms when read as an entirety." *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987); *see also Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) ("For the purposes of enforcement, a [] judgment is to be interpreted as a contract, to which the governing rules of contract interpretation apply"). As the Bankruptcy Court noted, a harmonious reading, reconciling the language in both the Sale Order and Confirmation Orders, compels the conclusion that the opt-out in the Confirmation Order was not superfluous because the provision "preserve[d] any claims Spitfire may have against Presidio

unrelated to the sale or the MSC." (Reconsideration Op. at A2421, 2424 (citing Reconsideration Tr. at 24:12-17 & 28:15-19 (explaining that the language in paragraph 45 was negotiated by the Debtors and Spitfire *after entry* of the Sale Order, and is unrelated to the sale or MSC))).

Spitfire's disagreement with the Bankruptcy Court's interpretation of its own order does not establish error amounting to an abuse of discretion. Moreover, as Presidio correctly points out, Spitfire's interpretation would render meaningless numerous provisions of the Sale Order that clearly provide for consent to a sale, free and clear of any purported "restrictive covenants" and "contract rights." *See Contrans*, 836 F.2d at 169 ("[A] construction which neutralizes any provision of a [court's order] should never be adopted if the [order] can be so construed as to give effect to all the provisions."). The Bankruptcy Court's interpretation gives effect to all provisions in both Sale Order and Confirmation Order.

## B.     The Bankruptcy Court Properly Denied the Reconsideration Motion

Spitfire challenges the Bankruptcy Court's denial of the Reconsideration Motion and its decision that the affidavit of its sole owner and chief executive officer, David D. Le Norman ( "Affidavit"), could not be introduced on reconsideration. (D.I. 9 at 4). Spitfire argues that the Bankruptcy Court somehow "wrongly discounted [the] contents [of the Affidavit] because it did not constitute 'new

evidence' and therefore could 'not be introduced on reconsideration.'" (*Id.* at 25 (quoting Reconsideration Order at A2422)).

According to Spitfire, "the Bankruptcy Court took Presidio at its word when Presidio claimed that it "had no part in" making any agreement to preserve Spitfire's claims.  Spitfire maintained that Presidio's misrepresentations "gained traction with the Bankruptcy Court," and the Affidavit was required to rebut Presidio's statements which ignored the existence of an agreement to preserve Spitfire's claims.  Spitfire argues that the Affidavit "attest[ed] to the various communications in which Presidio was involved" regarding the alleged agreement—although it did not attach those communications or otherwise identify or refer to them by sender, date, or general description.   (*Id.* at 25).  Spitfire contends that the Affidavit was offered in support of reconsideration "not because it was newly discovered, but rather because it was newly relevant to correct Presidio's misrepresentations that, if taken as true, will result in a manifest injustice" (*id.* at 25-26).

The Third Circuit has provided that a party seeking reconsideration must demonstrate at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999).

Spitfire's argument that "the Bankruptcy Court wrongly discounted the contents of the Affidavit because it did not constitute 'new evidence'" (D.I. 9 at 25) misstates the record and mischaracterizes the Bankruptcy Court's treatment of the Affidavit. Spitfire's Reconsideration Motion relied wholly on the third prong—the need to correct a clear error of law or fact or prevent a manifest injustice—and in its Reconsideration Opinion, the Bankruptcy Court stated:

> Spitfire maintains that only the third ground for reconsideration is at issue. Thus the Court will determine whether reconsideration of the Enforcement Order is necessary "to correct a clear error of law or fact or to prevent manifest injustice."

(A2419 (citing Reconsideration Tr. 22:19–25; 23:1–3)). The Bankruptcy Court did not misunderstand the basis or grounds under which Spitfire was asserting a purported right to have the Enforcement Motion reconsidered.

In its determination to exclude the Affidavit, the Bankruptcy Court observed that Spitfire could have introduced the Affidavit, or its contents, at the Sale Hearing or the Confirmation Hearing but did not. (*Id.* at A2422). The Bankruptcy Court further emphasized that Spitfire failed to present, or request the opportunity to present, the Affidavit at or prior to the Enforcement Hearing and that, while that hearing was not an evidentiary hearing, it was set by an agreed scheduling order. (*Id.* at A2422 (citing Agreed Scheduling Order, A2116-2117)). More importantly, the Bankruptcy Court clarified that *even if* the Affidavit were properly introduced, counsel's statements concerning Presidio's involvement would not give rise to clear

error warranting reconsideration because the Enforcement Order was not based on

Presidio's conduct but rather was based on findings that: (i) Spitfire did not file an

objection to the proposed sale of assets to Presidio; (ii) Spitfire did not object to the

Sale Order; and (iii) the Sale Order was not appealed and is final.  As the Court

explained:

> These findings are facts, discernible upon review of the record, of
> which this Court can take judicial notice.  The findings have no
> relation to, or basis in, the comments of Presidio's counsel.  That
> these findings indicate Presidio's misrepresentations gained traction is
> a non sequitur.
>
> It is not enough for Spitfire to allege that Presidio made
> misrepresentations to satisfy Rule 59(e)'s substantial burden.  To meet
> the standard for reconsideration, Spitfire must show Presidio's alleged
> misrepresentations influenced the Court's ruling.  Spitfire falls short
> of its burden because it does not make such a showing.  The Court's
> findings in the Enforcement Ruling are supported by the record, and
> there is no ground for reconsideration.

(Reconsideration Op. at A2422).  Spitfire has not shown how this sound reasoning

amounts to an abuse of discretion.

The Court also rejects Spitfire's argument that the Affidavit was required to

rebut statements made by Presidio's counsel during oral argument on the

Enforcement Motion that purportedly amounted to clear error or manifest injustice

and that required an affidavit from Mr. Le Norman to correct.  As Presidio correctly

points out, arguments of counsel do not constitute evidence.  *See Versarge v. Twp. of*

*Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) ("[W]e have repeatedly held that

21

unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court."); *Jersey Cent. Power Light Co. v. Lacey Tp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence . . . ."). Further, Spitfire was represented at the Enforcement Hearing and could have set the record clear at such time if it believed that statements of Presidio's counsel were inaccurate. Nor did Spitfire submit the contents of the Affidavit at or prior to the Enforcement Hearing as pointed out by the Bankruptcy Court. (Reconsideration Op. at A2422). Its failure to provide the Affidavit in advance also meant that counsel for Presidio had no opportunity to cross-examine Mr. Le Norman at the Enforcement Hearing.

The Bankruptcy Court did not commit an abuse of discretion when it refused to consider the Affidavit.

### C.    The Bankruptcy Court Had Proper Jurisdiction

Spitfire asserts two arguments regarding why the Bankruptcy Court did not have subject matter jurisdiction to hear the Enforcement Motion: (1) Spitfire did not consent to federal bankruptcy jurisdiction; and (2) the Enforcement Motion was neither a core proceeding nor related to a bankruptcy proceeding. (D.I. 9 at 15).

### 1.    Spitfire's Consent Is Irrelevant

With respect to the first issue, Spitfire contends that it never "consented to the exercise of federal bankruptcy jurisdiction" and takes issue with the Bankruptcy

Court's "suggestion," in footnote 35 of the Reconsideration Opinion, that Spitfire

consented to the exercise of federal bankruptcy jurisdiction.  (D.I. 9 at 15).  But

Footnote 35 of the Reconsideration Memorandum does not say that Spitfire

consented to the Bankruptcy Court's jurisdiction.  Rather, the Bankruptcy Court

explained that "Spitfire *initially* disputed the Court's subject matter jurisdiction, but it

*abandoned* this argument at the Reconsideration Hearing."  (*Id.* at A2425 (emphasis

added)).  The Bankruptcy Court added in footnote 35 the following exchange with

Spitfire's counsel:

> So you don't dispute that, that a Bankruptcy Court has jurisdiction to
> interpret and enforce its own sale and confirmation orders.  You don't
> dispute that fact?
>
> . . . **No.  There's no dispute there at all.**  What I do dispute is that in
> this context, okay, the Bankruptcy Court should have held in abeyance
> until these jurisdictional issues were resolved before the Northern
> District of Texas.

(*Id.* (emphasis added) (quoting Reconsideration Tr. at 16:7-15, A2393)).  From this,

the Bankruptcy Court noted that Spitfire did not *dispute* the court's subject matter

jurisdiction.  More importantly, as Presidio correctly argues, Spitfire's consent is

irrelevant to the Bankruptcy Court's exercise of subject matter jurisdiction in the first

place.  Whether or not Spitfire "consented" to the Bankruptcy Court's jurisdiction has

no impact on the court's ability to interpret its own orders.  *See Travelers Indem. Co.*

*v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly ha[s]

jurisdiction to interpret and enforce its own prior orders.").

**2.      The Bankruptcy Court Correctly Held That It Was the Proper Venue to Determine the Enforcement Motion**

Spitfire argues that the Enforcement Motion was not a core proceeding.  But this argument is yet another red herring because under either classification—core or non-core—there is jurisdiction in the Bankruptcy Court.  In other words, to ascertain whether jurisdiction exists, the Bankruptcy Court needed only to determine whether a matter is at least "related to" the bankruptcy.  *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 254 (3d Cir. 2007) ("[T]he determination that a case is not a core proceeding does not mean that a bankruptcy judge lacks authority with respect to it. Rather, [a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."); *cf. TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, 2020 WL 5066943, at *2 (N.D. Tex. Aug. 27, 2020) (same).  Because interpretation of the Bankruptcy Court's orders is at least "related to" bankruptcy (if not "core"), the Bankruptcy Court did not err when it held it was the proper venue for interpreting and enforcing its own orders.

Spitfire acknowledges that "the sale of assets in bankruptcy are undeniably core matters." (D.I. 9 at 14).  Despite this concession, Spitfire takes issue with the fact that "the proceedings in the [Debtors'] bankruptcy have effectively concluded." (*Id.*)  But as explained in *Lycoming Engines v. Superior Air Parts*:

> **Federal courts [] retain significant jurisdiction after** a discharge order is issued and **a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders and**

important substantive rights granted by the Bankruptcy Code—**even if the claims would not affect the bankruptcy estate**.

*Lycoming*, 2014 WL 1976757, at *3 (N.D. Tex. May 15, 2014) (emphasis added) (citing *In re Bass*, 171 F.3d at 1022; *Travelers*, 557 U.S. 137, 151–52). Here, as in *Lycoming*, there is significant federal court jurisdiction postconfirmation to hear and dispose of cases that involve interpretation and enforcement of the Bankruptcy Court's prior orders. Such cases concern "arising in" and "arising under" jurisdiction (*i.e.*, core jurisdiction). *Lycoming Engines*, 2014 WL 1976757, at *3.

As Presidio correctly points out, there is no controversy regarding whether a bankruptcy court can interpret and enforce its own orders, even post-confirmation. *See Travelers Indem. Co.*, 557 U.S. at 151 (2009) ("a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."); *see also In re Cone Mills Corp.*, 313 F. App'x 538 (3d Cir. 2009) (affirming Bankruptcy Court ruling in favor of successor to purchasers and holding that creditor was precluded from attacking sale order); *In re Motors Liquidation Co.*, 513 B.R. 467 476–77 (Bankr. S.D.N.Y. 2014) (granting motion to enforce judgment and preliminarily enjoining prosecution of class action against purchaser of assets of chapter 11 debtor where such action was grounded in theory of successor liability in violation of provisions of sale order).

The inquiry Spitfire urges the Court to undertake—whether its claims would or would not affect the bankruptcy estate—is simply misplaced in the context of a Bankruptcy Court interpreting and enforcing its own orders. *See Lycoming Engines*,

2014 WL 1976757, at *3 (interpretation and enforcement of a bankruptcy court's orders "fall[s] within the court's 'arising in' and 'arising under' jurisdiction.")  Under 28 U.S.C. § 157(b)(2), orders with respect to "confirmations of plans" and "approving the sale of property" are core proceedings.  (*See* Reconsideration Op. at A2426 ("the [Bankruptcy] Court retains jurisdiction because enforcement of the Sale Order and Confirmation Order is necessary to administer the estates." (citing Fed. R. Bankr. P. 3020(d) (providing that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate.")))  Moreover, Spitfire's claims concern issues over which the Bankruptcy Court retained exclusive jurisdiction because they require interpretation of the orders of the Bankruptcy Court involving the sale, the related purchase agreement and confirmed Plan.  (*See* Sale Order at A1374 ("This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation of this [Sale] Order."); *see also* Confirmation Order at A1893-A1894 ("[T]his Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law …" )).  The Bankruptcy Court correctly concluded that it is the proper forum to determine such disputes to give effect to the meaning of § 363(f) and the benefit of the bargain buyers obtain by purchasing assets through a bankruptcy sale.  (Enforcement Order at A2325; Reconsideration Op. at A2418).

Spitfire asserts that the "natural consequences of ownership of certain property" compels a different conclusion. (*See* D.I. 9 at 15). But the Court finds no support for this argument. Spitfire simply ignores the fact that the property at issue was sold pursuant to a bankruptcy sale proceeding; but for the Bankruptcy Code and related sale proceeding and order, the sale at issue would not exist. *See In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) (discussing core jurisdiction and explaining that "[a]n order consummating a debtor's sale of property would not exist but for the Code"). The Enforcement Motion clearly fell within the Bankruptcy Court's related to and/or core jurisdiction, and no error regarding venue was made.

**D.    The Bankruptcy Court Was Not Required to Abstain**

**1.    Mandatory Abstention**

As Presidio correctly argues, a bankruptcy court is not required to abstain from interpreting and enforcing its own orders, even when a bankruptcy case is closed, after a bankruptcy estate no longer exists, and even if the claims would not affect the bankruptcy estate. *See Lycoming Engines*, 2014 WL 1976757, at \*3 ("Federal courts [] retain significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders . . . even if the claims would not affect the bankruptcy estate. Such matters fall within the court's "arising in" and "arising under" jurisdiction [*i.e.*, core jurisdiction (*see* 28 U.S.C. §§ 1334 and 157(b))]."); *see also Travelers*, 557 U.S. 137, 151–52.

Further, interpretation and enforcement of the bankruptcy court's orders involves bankruptcy law not state law. Spitfire cites no authority that holds otherwise.

Moreover, of the factors that courts apply in determining whether abstention is mandatory, Spitfire failed to meet two of the requisite factors: (1) Spitfire failed to file a timely motion under § 1334(c)(2), and (2) the issue involves a core proceeding. *See* 28 U.S.C. § 1334 (requiring "a timely motion of a party"); *see also In re Seven Fields Dev. Corp.*, 505 F.3d 237, 254 (3d Cir. 2007) (same). Thus, mandatory abstention does not apply, and the Bankruptcy Court committed no error on this point. (*See* Enforcement Order at A2326; Reconsideration Op. at A2425, n.34 ("Mandatory abstention under 28 U.S.C. 1334(c)(2) is not at issue in this case, as this is a core proceeding")).

### 2. Permissive Abstention

A bankruptcy court may abstain from hearing a proceeding in the interest of justice, comity with state courts, or respect for state law, under 28 U.S.C. 1334(c)(1). Permissive abstention, however, should be the exception, not the rule. *See Penson Techs. LLC v. Schonfeld Holdings LLC (In re Penson Worldwide, Inc.)*, 587 B.R. 6, 22 (Bankr. D. Del. 2018) (internal citations omitted); *see also* COLLIER ON BANKRUPTCY ¶305.02 (16th ed. 2009 rev. 2021). Many factors guide courts in evaluating a request for discretionary abstention, and in this district, courts often look to the following factors:

(1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.

*In re Penson Worldwide*, 567 B.R. 6, 22 n. 73 (Bankr. D. Del. 2018).

Spitfire's opening brief argues that the Bankruptcy Court didn't consider the factors informing discretionary abstention…," and while it further contends that "all of the factors counsel in favor of abstention here"— Spitfire itself addresses only a few.  (D.I. 9 at 22-24).  Spitfire argues that the Bankruptcy Court erred in failing to permissively abstain because (1) the Bankruptcy Court does not have jurisdiction and cannot conduct a jury trial; (2) the outcome of the dispute will not affect the efficient administration of the estate; (3) state law issues raised by Spitfire's claims predominate over the bankruptcy issue of whether Presidio may rely on the terms of the Sale Order; and (4) Presidio was guilty of forum shopping when it filed the Enforcement Motion in the Bankruptcy Court after advancing the same arguments in the Texas Action.

The Court reviews the Bankruptcy Court's determination not to permissively abstain from hearing the Enforcement Motion for abuse of discretion. While Spitfire lays out why it disagrees with the Bankruptcy Court's decisions to decline permissive abstention, nowhere in its opening brief or reply brief does Spitfire indicate that "*no reasonable person would adopt the lower court's view.*" *In re SemCrude, L.P.*, 428 B.R. at 593 (emphasis added). This Court need only find that it was not "arbitrary, fanciful or clearly unreasonable," for the Bankruptcy Court to exercise jurisdiction to interpret its own orders. *Stecyk*, 295 F.3d at 412. Ruling on the Enforcement Motion did not require the Court to exercise subject matter jurisdiction over the claims in the Texas Action, thus the Court did not commit a clear error of law in declining permissive abstention. The Bankruptcy Court's view that it was appropriate to exercise jurisdiction to interpret its own orders was clearly reasonable; thus, there was no abuse of discretion in the court's decision to decline permissive abstention.

**E.    *Lone Star* Does Not Support Spitfire's Arguments**

Spitfire contends that the Bankruptcy Court's decision not to apply *Lone Star Industries, Inc. v. Liberty Mutual Insurance*, 131 B.R. 269 (D. Del. 1991) constitutes "a manifest error of law." (D.I. 9 at 20). In Spitfire's view, the Bankruptcy Court was required to hold the Enforcement Motion proceeding in abeyance until the Texas District Court determined whether the Bankruptcy Court had jurisdiction. (*Id.*)

During the Enforcement Hearing, and in response to the court's inquiry regarding *Lone Star*, Spitfire conceded federal bankruptcy jurisdiction with regard to the bankruptcy court's interpretation and enforcement of its own orders and *Lone Star* does not alter this fact.  (Enforcement Tr. at 34:15-35:18, A2291-2292).  Despite this concession, Spitfire argues on appeal that a finding of bankruptcy jurisdiction by the Northern District of Texas court was a "mandatory prerequisite" to the Bankruptcy Court's exercise of its jurisdiction to enforce its own orders.  (D.I. 9 at 20).

*Lone Star* does not support Spitfire's position, either procedurally or substantively.  *Lone Star* did not involve the question of enforcement of a bankruptcy court's prior orders, which is the primary question presented here.  Rather, *Lone Star* concerned a contract dispute that arose pre-petition in the underlying litigation involving a debtor (Lone Star) that later filed for bankruptcy protection.  Spitfire has not complained about pre-petition conduct.  Moreover, the Enforcement Motion is a core proceeding involving the Bankruptcy Court's orders, whereas the litigation in *Lone Star* was non-core.  Finally, *Lone Star* involved the determination of a motion to transfer or remand, which was not at issue before the Bankruptcy Court.

As Presidio correctly argues, *Lone Star* has never been applied to require a bankruptcy court to hold a proceeding regarding interpretation and enforcement of its own orders in abeyance pending the decision of another court on federal subject matter jurisdiction.  As district courts in this circuit have stated, a bankruptcy court

can "assert[] its historic and time-honored jurisdiction to interpret and enforce its own prior orders." *In re Christ Hosp.*, 2014 WL 4613316, at *10 (D.N.J. Sept. 12, 2014) (internal quotations omitted).  The bankruptcy court in *Christ Hospital*, faced with the same situation as the Bankruptcy Court in this case, exercised jurisdiction to provide a consistent interpretation of its own orders and, importantly, to prevent collateral attacks on a completed bankruptcy sale process.  *See id.*

The Bankruptcy Court correctly concluded that "*Lone Star* does not apply to the facts of this case." (Reconsideration Op. at A2425).

## IV.   CONCLUSION

For the reasons discussed above, the Court will affirm the Enforcement Order and Reconsideration Order.   The Court will issue an Order consistent with this Opinion.